## In Re Anonymous No. 56 D.B. 83

Disciplinary Board Docket No. 56 D.B. 83.

To The Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

McGINLEY, *Member,* May 3, 1985—Pursuant to Rule 208(d)(2) of the Pennsylvania Rules of Disciplinary Enforcement the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## FINDINGS

[    ] (respondent) is a 42 year old lawyer who was admitted to the Bar of the Supreme Court of Pennsylvania in 1975. He maintains offices in [    ] County, Pennsylvania.

A petition for discipline was filed on October 3, 1983. The report of the hearing committee was filed on December 26, 1984, and the matter referred to the Disciplinary Board of the Supreme Court on February 7, 1985.

Initially, four charges were alleged in the petition for discipline. However, at the time of the hearing, one of the other charges was not pursued, leaving three separate and distinct charges against respondent.

### Charge One

The hearing committee received evidence upon a charge, the gist of which involved respondent's conduct during the representation of one [A] in child custody litigation.

On September 7, 1979, a hearing was scheduled before a master. Respondent had not been paid as of the time of the hearing. Immediately before the hearing, he presented [A] with a promissory note and told [A] that he would not represent [A] during the hearing if [A] did not execute the note. A similar scenario presented itself before a second hearing on

February 15, 1980. Once more, respondent told [A] that respondent would not represent [A] unless promissory judgment notes were executed to secure the payment of previous, unpaid fees as well as the fee for attending the scheduled hearing.

Before each of these hearings, respondent had met with [A] and had talked about the hearing. At no time did respondent make arrangements for payment or security for payment; at no time did respondent inform [A] that he would not represent [A] at the hearings if he remained unpaid.

Respondent was charged with violating the following Disciplinary Rules of The Code of Professional Responsibility: D.R. 1-102(A)(6) dealing with conduct that adversely reflects on a lawyer's fitness to practice law, and D.R. 7-101(A)(2) which deals with a lawyer who has intentionally failed to carry out a contract of employment.

The hearing committee found that respondent had violated D.R. 1-102(A)(6) and not D.R. 7-101(A)(2).

The Disciplinary Board concurs with the hearing committee's factual findings and conclusions with respect to the violation of D.R. 1-102(A)(6).

The record supports the finding that respondent, immediately before two separate hearings, coerced the execution of promissory notes to secure the payment of unpaid legal fees. It is obvious that the interval of time before and during a hearing is a stressful and anxious one. It is particularly inappropriate to suggest that one would not represent a client during such a time if the client has not paid or if the payment of fees has not been secured. As the hearing committee determined, respondent had a remedy to pursue if he was not paid; he could have requested permission to withdraw as counsel prior to the commencement of the hearing. More signifi-

cantly, during the preparatory meetings which antedated the hearings, respondent had ample opportunity to discuss with respondent the payment of fees or security for their payment.

## Charge Two

The second charge upon which evidence was taken arose from respondent's alleged misconduct in connection with yet another matter involving domestic litigation; a matter involving the custody of children.

The factual findings of the hearing committee, which are supported by the record, may be summarized as follows:

[B] (Mr. [B]) was a party to a property and settlement agreement with his wife. The agreement included provision that Mrs. [B] was to have custody of their minor children.

After the conclusion of a visitation period, Mr. [B] refused to return the children to their mother. He consulted respondent. Respondent discussed with Mr. [B] the possible legal implications of his conduct, Mr. [B] did not surrender custody.

Thereafter, respondent commenced an action styled "petition to confirm custody in [B]"; the action was filed with the [    ] County Court of Common Pleas.

Mrs. [B], through counsel, filed a petition for writ of habeas corpus.

On February 26, 1980, the honorable [C] determined that the petition filed by respondent was an inappropriate method to raise a question of custody. Accordingly, he dismissed the petition without a hearing. In addition, Judge [C] granted the petition for habeas corpus which had been filed on behalf of Mrs. [B]. He further ordered that Mr. [B] should be

incarcerated until such time as the children were returned to the mother.

Respondent immediately initiated an appeal of Judge [C]'s order to the Superior Court. On appeal, respondent also sought a supersedeas of Judge [C]'s order which incarcerated Mr. [B].

His conduct on appeal and his representations to the Superior Court as to the events in the trial court form the gravamen of the hearing committee's finding of a violation of Disciplinary Rules.

On appeal, respondent represented to the Superior Court the status of the record below and the fact that the transcript which he had prepared from a tape recording made by him was accurate. The purported transcript was not an accurate record of the proceedings before Judge [C]. Respondent specifically omitted his agreements and stipulations with respect to the factual matters contained in the petition for habeas corpus which had been filed on behalf of Mrs. [B].

Disciplinary Counsel contended that respondent intentionally misrepresented the events in the court below to the Superior Court. In his answer, respondent denied an intent to deceive and asserted, essentially, that he had presented or made available the actual transcript to the Superior Court. He indicates that any inaccuracies in his written filings with the court were inadvertent and would have been corrected had those inaccuracies been called to the attention of the court by adverse counsel.

The hearing committee found that respondent had intentionally misrepresented the events before Judge [C].

As a result of these intentional misrepresentations, the record indicates that the Superior Court reversed Judge [C]'s ruling, remanded the case for a hearing on respondent's petition to confirm custody, and further ordered Mr. [B]'s release from custody

upon presentation of a surety bond and the presentation of the children at the hearing. The Superior Court also ordered Judge [C] to treat the "petition to confirm custody" as a petition to change custody due to a change of circumstances.

On remand, Judge [C] found that there has been no change of circumstance and ordered that the children be returned to the custody of Mrs. [B].

As a result of the finding of intentional misrepresentation to the Superior Court, the hearing committee found a violation of D.R. 1-102(A)(4) dealing with conduct involving dishonesty, fraud, deceit or misrepresentation. The hearing committee thoughtfully and throughly considered the evidence, the record and the credibility of the witnesses. The Disciplinary Board confirms its findings.

Respondent had also been charged with violating D.R. 7-102(A)(7) which deals with a lawyer counseling a client in conduct that the lawyer knows to be illegal. Disciplinary Counsel had charged that respondent had counseled Mr. [B] to violate the terms of his custody agreement. However, the hearing committee correctly found that there was no evidence that Mr. [B] had in fact engaged in such conduct.

## Charge Three

The final charges against respondent again arise from his conduct before the honorable [C] in the Court of Common Pleas of [      ] County, and again involved his representation of a litigant before Judge [C].

On December 8, 1980, Judge [C] had scheduled a hearing involving an individual named [D]. The matter involved allegations that [D] had committed

indirect criminal contempt in violating the conditions of an order previously entered by Judge [C].

At the time of the commencement of the hearing on contempt, respondent and [D] were seated in the back of the courtroom with the audience. Despite requests from Judge [C] that [D] and respondent come forward to participate in the trial of the case, respondent persisted in remaining in the back of the courtroom, interjecting himself into the procedure, and advising his client from the audience. After a period of time, Judge [C] who had previously requested respondent to come forward to counsel table and participate in the proceedings directed respondent to do so.

Respondent ignored Judge [C] and persisted in injecting himself into the proceedings in a manner which was calculated to disrupt the orderly progress of the proceedings. Judge [C] then ordered respondent to leave the courtroom. Judge [C] found respondent to be in contempt of court and ordered him to be taken into custody.

After a recess, Judge [C] informed respondent that his conduct in the court had been contemptuous, and that he had interfered with the process of the court. Respondent was sentenced to pay a fine of $1,000 and committed to the [    ] County Jail until such time as the fine had been paid.

Respondent appealed the judgment of sentence for direct criminal contempt to the Superior Court. In an opinion filed November 15, 1982 the Superior Court affirmed respondent's conviction of criminal contempt.

The hearing committee found that the conduct of respondent before Judge [C] constituted a violation of D.R. 7-106(C)(6) which states that "in appearing in his professional capacity before a tribunal, the lawyer shall not engage in undignified or

uncourteous conduct which is degrading to a tribunal." Respondent's conduct, the findings of Judge [C] of criminal contempt, and the affirmation of those findings by the Superior Court compel a finding of the violation of this Disciplinary Rule. Respondent has offered no substantive defense to this violation. The pleadings which he has filed in this matter reflect an ongoing, virulent animosity toward the Judges of the Court of Common Pleas of [ ] County. The record is bereft of any factual matters which would tend to corroborate any of the matters asserted by respondent in his pleadings, and at the hearing on this proceeding.

## CONCLUSION AND RECOMMENDATION

The Disciplinary Board accepts the report of the hearing committee including its findings of fact and conclusions of law. The report is thorough, well reasoned and complete.

Further, the Disciplinary Board concurs with the recommendation of the hearing committee that respondent be suspended from the practice of law for a period of four months.

The hearing committee considered the law and evidence in this case, observed that respondent has shown no contrition. After careful deliberation, the hearing committee also concluded that "Respondent perceives that he did nothing wrong and would willfully engage in similar misconduct again in like circumstances."

After having heard the testimony and having observed respondent's actions at the trial of this case, the committee concluded that respondent was unwilling to conduct himself in accordance with the Disciplinary Rules of Professional Responsibility and recommended a severe form of discipline. The

hearing committee further invited the Disciplinary Board to initiate proceedings to determine the mental capacity of the respondent. With this recommendation, the Disciplinary Board has not agreed. At the conclusion of a four month suspension, respondent would have the burden of establishing to a hearing committee, the Disciplinary Board, and ultimately to this honorable court that he possesses the moral and intellectual qualities necessary to practice law in the Commonwealth of Pennsylvania. Accordingly, the recommendation of the hearing committee that proceedings be initiated to determine the mental capacity of respondent to practice law is rejected.

It is the decision of the Disciplinary Board that all costs are to be paid by respondent.

It is the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania that respondent be suspended from the practice of law for a period of four months.

Mrs. Hammerman dissents as to the four month suspension and would recommend that respondent be placed on inactive status until such time as a report of his mental capacity or ability to practice law is received.

Mr. McDonald did not participate in the adjudication.

## EXCERPT OF FACTUAL FINDINGS

1. Respondent was born in 1941, admitted to practice law in the Commonwealth of Pennsylvania in 1975, and his office is located at [    ].

2. In July, 1979, [A] hired respondent to pursue a custody action on his behalf, as to which petition for writ of habeas corpus had already been filed on his behalf.

3. Respondent agreed to represent [A] for a fee of $40 per hour and agreed to attempt to obtain an or-

der granting [A] custody of his two minor children.

4. On or about September 7, 1979, respondent represented [A] at a hearing before the [   ] County Domestic Relations Master regarding [A]'s custody action.

5. After respondent and [A] went into the hearing room and sat at a table but before the master entered the room to commence the hearing, respondent produced a booklet of promissory notes and told [A] to sign a note or [A] would have to find someone else to represent him at the hearing.

6. The promissory note was already filled in when respondent presented it to [A].

7. [A] then read and signed the note.

8. Respondent then represented [A] at the hearing.

9. [A] believed that if he did not sign the promissory note, respondent would have walked out, as respondent said he would do so.

10. On February 15, 1980, respondent represented [A] at a hearing regarding [A]'s custody petition at the [   ] County Courthouse.

11. Respondent, [A], and [A]'s father went into the courtroom, whereupon respondent and [A] sat at the counsel table and [A]'s father sat behind them.

12. Before the hearing started, respondent produced a booklet of promissory notes and told [A] that he would not represent him at the hearing unless he signed a promissory note.

13. [A] then read and signed the promissory note.

14. Respondent then represented [A] at the hearing.

15. [A] believed that if he did not sign the promissory note, he would have to find someone else to represent him.

16. About one week before the September 7, 1979 master's hearing, [A] met with respondent at his office, at which time [A] paid respondent and respondent did not say anything to [A] about not representing him at the hearing unless [A] paid respondent more money.

17. Within a week of the February 15, 1980 hearing, [A] met with respondent at his office, at which time [A] paid respondent and respondent did not say anything to [A] about not representing him at the February hearing.

18. On or about November 19, 1979, the provisions of a written property settlement, support and custody agreement, which had been entered into by [Mrs. B] and [B], were entered as an order of court in the [   ] County Court of Common Pleas.

19. The agreement gave Mrs. [B] custody of her children and allotted certain periods of partial custody to [B].

20. In or about January or February, 1980, [B] retained respondent.

21. On or about February 24, 1980, [B] contacted respondent, expressed concern that his children were in abusive circumstances and were being harmed where they were.

22. [B] sought respondent's advice as to his legal rights and particularly as to what might be done to protect his children.

23. Respondent advised [B] that if, under the circumstances described to respondent, [B] was genuinely concerned for the welfare of his children, he should have them removed immediately.

24. Respondent did not specifically advise [B] to "keep" the children, nor did respondent specifically direct or advise [B] to violate an order of court.

25. Respondent advised [B] that if he chose to keep the children, this would have to be his decision

as he was the person with the knowledge of the facts and the circumstances.

26. Respondent advised [B] that there were "risks" involved if he decided to keep the children including the possibility of being placed in jail.

27. On Sunday, February 24, 1980, at the conclusion of a scheduled episode of partial custody, [B] refused to return the children to their mother, in apparent violation of the November 19, 1979 order of court.

28. On or about February 25, 1980, the day after [B] refused to return the children to their mother, [E], Esq., filed a petition for writ of habeas corpus with the [   ] County Court of Common Pleas to enforce the November 19, 1979 order of court.

29. Also on or about February 25, 1980, respondent filed a petition to confirm custody in [B] with the [   ] County Court of Common Pleas.

30. A hearing was scheduled regarding the petition for writ of habeas corpus and the petition to confirm custody for February 26, 1980, before [   ] County Court of Common Pleas Judge [C], with [E] as the moving party.

31. At the February 25, 1980 proceeding, [E] approached the bench and indicated to the court that perhaps time could be saved if [B]'s counsel would stipulate to the facts alleged in [E]'s petition.

32. Respondent then in some unequivocal manner so stipulated to the facts alleged in [E]'s petition.

33. [E] then rested and [E] and respondent engaged in oral argument to the court.

34. Respondent did not call any witnesses of his own nor did he attempt to put on a defense, although he had an opportunity to do so.

35. After respondent and [E] made oral arguments, Judge [C] then denied, without hearing, respondent's petition to confirm custody, stated that

respondent's petition was not a proper procedure to determine custody or to protect the rights of the children, granted the petition for writ of habeas corpus, and ordered [B] to be detained in prison until custody of the children was returned to Mrs. [B] under the November 19, 1979 order.

36. Respondent then appealed Judge [C]'s decision to the Superior Court and requested a supersedeas of Judge [C]'s order by an application for release pending appeal.

37. On February 29, 1980 a hearing was held before Superior Court Judge [F] on respondent's request for a supersedeas.

38. Respondent filed a brief in support of the application with the Superior Court.

39. In his brief, respondent argued that the actions of Judge [C] had been in violation of [B]'s constitutional right to due process because he did not conduct a hearing.

40. Attached to the brief as "Exhibit A" was a purported transcript of the February 26, 1980 proceeding.

41. In his brief, respondent stated the transcript was prepared from a tape recording made by respondent of the February 26, 1980 proceeding.

42. Respondent certified in his brief that the transcript was an accurate record of the February 26, 1980 proceeding.

43. Respondent maintained to Judge [F] that the transcript he attached was accurate and based upon a tape recording.

44. Respondent's purported transcript was not an accurate record of the February 26, 1980 proceeding, as respondent specifically omitted his agreement in stipulation as to the facts contained in Attorney [E]'s petition for writ of habeas corpus.

45. Respondent's testimony reveals that he was aware of the stipulation and that he had omitted the stipulation from the transcript he had prepared for the Superior Court.

46. The Superior Court entered an order denying [E]'s petition to quash the application for release pending appeal, remanding the case back to the [   ] County Court of Common Pleas for a hearing within five days on respondent's petition to confirm custody with said petition to be treated as a petition to change custody due to a change in circumstances relating to the welfare of the children, and ordering that upon posting bond in the amount of $2,000 with surety approved by the lower court, [B] was to be released from custody with the release to be conditioned upon [B]'s production of the children in court at the hearing.

47. On March 4 and 5, 1980, a hearing was held before Judge [C] regarding the custody of the [B] children.

48. In a March 12, 1980 opinion, Judge [C] decided that there was no change in circumstances from November 19, 1979 to the time of the hearing that supported a change in custody and ordered that custody continue in Mrs. [B].

49. On December 8, 1980, a scheduled hearing was held before [   ] County Court of Common Pleas Judge [   ] regarding the charge that [D] committed indirect criminal contempt by violating the conditions of an order of October 27, 1980 entered under the protection from abuse act.

50. At the beginning of the hearing, respondent and [D] seated themselves in the audience section of the courtroom instead of at the counsel table.

51. When Judge [C] requested that [D] move from the audience section and sit at the counsel ta-

ble, respondent, speaking on behalf of [D], told Judge [C] that [D] declined to do so.

52. Judge [C] then directed that [D] move from the audience section to the counsel table.

53. Respondent refused to sit down when told to do so by Judge [C].

54. Respondent told Judge [C] that he and [D] would not participate in the hearing.

55. Upon Judge [C]'s direction, [D] was placed at the counsel table.

56. Judge [C] then advised respondent not to make any aside comments during the hearing and that if respondent had any remarks, he should address them to the court.

57. Respondent assured Judge [C] that if he had remarks that he intended to address to the court he would do so.

58. Judge [C] then stated respondent would not address the court from the position he was then in, that being in the audience section of the courtroom.

59. Judge [C] also stated that respondent was to be silent throughout the entire proceeding.

60. Judge [C] then asked [D] if he was represented by counsel.

61. Respondent interrupted Judge [C] and stated he would instruct [D] from where he was sitting.

62. Respondent stated he would not move forward to the bar of the court.

63. Judge [C] then told respondent that he was not to address the court from that position and directed that respondent come to the bar of the court.

64. Respondent then told [D] to say nothing.

65. Judge [C] then directed that respondent come to the bar of the court for the purpose of answering the court's charge that he was in contempt of the court.

66. Judge [C] then stated to respondent that respondent appeared in the courtroom claiming to be there only as a member of the audience not representing [D], although the record reflected that he did represent [D].

67. Judge [C] also stated to respondent that he had persisted in talking aloud to his client and other people in the courtroom and that he did so over and above the statement of the court that he was to cease and desist talking unless he appeared at the bar of the court, representing his client.

68. Judge [C] also stated to respondent that he had ignored the instructions of the court.

69. Subsequently, Judge [C] told respondent that if he wished to represent [D] at the hearing, he would have to sit at the counsel table.

70. Respondent stated that he did not wish to be seated at the counsel table.

71. Respondent stated that he and [D] were not participants.

72. Respondent stated he represented [D] in this action.

73. Respondent stated that his advice to [D] was that he should not participate in the hearing.

74. Judge [C] then excused respondent from the courtroom.

75. While Judge [C] told [D] of his right to counsel, respondent interrupted him to advise [D].

76. When Judge [C] told respondent that he was excused from the courtroom, respondent again interrupted him to advise [D].

77. Judge [C] then directed respondent to leave the courtroom.

78. Respondent again instructed [D] not to answer any questions.

79. Judge [C] then found respondent to be in contempt of court and ordered that he be taken into custody.

80. Judge [C] again told [D] of his right to counsel and asked him if he understood his right to counsel but [D] refused to answer.

81. After a recess, Judge [C] told respondent that his conduct in the court that afternoon had been contemptuous, that he had interfered with the process of the court, he had instructed his client to sit in the audience portion of the courtroom and not take his position at the bar of the court, he continued to conduct conversations with his client and others in the courtroom, and he had interrupted the court.

82. Judge [C] then sentenced respondent to pay a fine of $1,000 and committed him to the [  ] County Prison until such time as the fine had been paid.

83. Respondent appealed the judgment of sentence for direct criminal contempt to the Superior Court.

84. In the opinion filed November 15, 1982, the Superior Court affirmed respondent's conviction.

## ORDER

And now, this June 14, 1985, upon consideration of the recommendation of the Disciplinary Board dated May 3, 1985, it is ordered that [Respondent] be and he is suspended from the Bar of the Commonwealth for a period of four months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa. R.D.E.

Mr. Justice Larsen and Mr. Justice McDermott dissent and would suspend for one year.